LARRY THOMAS *v.* STATE OF INDIANA.

[No. 1170S265. Filed July 13, 1973. Rehearing denied August 31, 1973.]

*A. Martin Katz*, of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

HUNTER, J.—This is a direct appeal from a conviction of involuntary manslaughter. Appellant was indicted for second degree murder in the shotgun death of Betty Spiller. A jury trial commenced on March 16, 1970. Appellant was found guilty of involuntary manslaughter and was sentenced to state prison for a term of one to ten years. His motion for a new trial was overruled on June 23, 1970. On January 11, 1971, this Court granted appellant permission to file a belated appeal.*

One issue is presented herein. Appellant contends that the evidence at trial was insufficient to prove involuntary manslaughter. In particular, he urges that there was no direct proof of the commission of an "unlawful act." Involuntary manslaughter is defined in IC 1971, 35-13-4-2; Ind. Ann. Stat. § 10-3405 (1972 Supp.), as follows:

> "Involuntary Manslaughter. Whoever kills any human being without malice, expressed or implied, involuntarily but in the commission of some unlawful act, is guilty of involuntary manslaughter, and, on conviction, shall be imprisoned in the state prison for not less than one [1] nor more than ten [10] years: . . ."

The State contends that the evidence supports a finding that the appellant was engaged in the unlawful act of purposely aiming a shotgun at the decedent as defined in IC 1971, 35-1-79-5; Ind. Stat. Ann. § 10-4708 (1972 Supp.):

> "*Aiming weapons.*—It shall be unlawful for any person over the age of ten [10] years, with or without malice, purposely to point or aim any pistol, gun, revolver or other firearm, either loaded or empty, at or toward any other person; and any person so offending shall be deemed guilty of an unlawful act . . ."

When this Court is faced with a sufficiency of the evidence argument, we will consider only that evidence most favorable

---

* This case was transferred and re-assigned to this office on June 25, 1973.

to the State together with all reasonable inferences therefrom which will support a finding of guilty. The conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably have inferred guilt beyond a reasonable doubt. *Livingston* v. *State* (1972), 257 Ind. 620, 277 N. E. 2d 363.

There were no eyewitnesses to the shooting incident. The facts most favorable to the State disclose that two days before the shooting the appellant took a shotgun from the trunk of his car, polished it in the kitchen of his apartment, and remarked that, "This is for a nigger." On October 1, the day before the shooting, the appellant engaged in a heated telephone conversation with the decedent during which time he made threatening remarks toward her. Later that day the victim telephoned a girl friend who testified that Betty Spiller's voice was not normal. The witness further testified that the appellant then got on the telephone and she informed him that Betty had been associating with another man. The appellant asked what kind of car the other man drove and asked where he could be found. The shooting took place at approximately 2:15 a.m. on October 2. When the police arrived on the scene, they found the victim in the kitchen shot in the back. Two spent shotgun shell casings were found on the floor; the shotgun was found next to the body. There was a shotgun hole in a mattress in the bedroom.

A neighbor testified that shortly after he heard the shots, the appellant drove away in his car. The appellant returned to the scene after the police arrived, observed their presence, left the scene again and did not surrender to the authorities until one week after the shooting. During this week the appellant stayed with a friend, because he was "scared." Two days after the shooting he phoned the victim's mother and told her that, "I killed Betty and I'm sorry."

Appellant's hypothesis is that the shooting was an accident. He testified that the victim was shot as he was demonstrating to her how to break down the shotgun. On cross-examination,

he testified that the victim already knew how to break down the weapon and the first shot discharged in the bedroom while she was attempting to dissassemble the gun herself. Thereafter, while he was attempting to explain the proper disassembly procedure, the shotgun misfired a second time, killing the victim. His explanation of how the victim was shot in the back while he was allegedly demonstrating the mechanics of the weapon is that, "she was backwards as she came out of the refrigerator, that's how it happened."

The State's ballistics expert testified that the shotgun broke down properly when inspected by him. Under the circumstances, the jury was justified in finding that it was highly improbable that the shotgun in question misfired twice in succession. The trier of fact was free to believe or disbelieve appellant's testimony that the shotgun was not purposely aimed at the victim.

It cannot be denied that the shotgun was pointed toward the decedent when it fired. The issue is whether the evidence supports the inference that it was purposely aimed at the victim. This Court was faced with an identical issue in *Fausett* v. *State* (1941), 219 Ind. 500, 39 N. E. 2d 728. The defendant in *Fausett* was charged by indictment with murder in the first degree in a shotgun death. He was found guilty at trial of involuntary manslaughter. What the Court stated there also applies here:

> "We believe that in the instant case when we consider the relationship of the parties involved, the circumstances surrounding the occurrence and the statements made and the silence maintained by the appellant after the shooting occurred, we find abundant evidence to support the inference of the jury that the appellant herein intentionally pointed the shotgun at [the decedent]." 219 Ind. at 505-506.

We believe when we consider the facts before the trial court that there was substantial evidence from which the jury could reasonably infer that the appellant did purposely aim the shotgun at the victim, and she died as a result of the

shotgun wound. Therefore, the judgment of the trial court is hereby affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 298 N. E. 2d 425.